## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2017, 10:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Clayton W. Morgan
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Zachariah M. Phillips
The Law Office of Melissa
Winkler-York
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Adam Weddle,

*Appellant-Respondent,*

v.

Theresa Perry-Weddle,

*Appellee-Petitioner.*

March 29, 2017

Court of Appeals Case No.
49A02-1605-DR-962

Appeal from the Marion Superior
Court

The Honorable Michael D. Keele,
Judge

The Honorable Victoria
Ransberger, Magistrate

Trial Court Cause No.
49D07-0708-DR-32614

**Robb, Judge.**

# Case Summary and Issue

Theresa Perry ("Mother") and Adam Weddle ("Father") are the parents of Z.W. and divorced in 2008. In 2014, the trial court modified custody of Z.W., awarding Mother primary physical and sole legal custody. Father now appeals, raising two issues for our review, which we consolidate and state as whether the trial court abused its discretion in modifying child custody. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

In December 2008, the trial court issued a written decree dissolving Mother's and Father's marriage. As a part of the decree, the trial court awarded the parties joint legal custody with Father to have primary physical custody. By 2010, Mother and Father shared parenting time equally.

In August 2014, Father gave Z.W. a prescription pill not prescribed for Z.W., which caused side effects. Thereafter, Mother refused to return Z.W. to Father's care and filed a verified petition to modify custody. Following hearings on the matter, the trial court issued findings of fact and conclusions—at Mother's request—awarding Mother primary physical and sole legal custody of Z.W.:

Findings of Fact

1. . . . This judicial officer has been the sole judicial officer for this family for nearly 8 years. . . . After almost 6 years, post-

dissolution, [Z.W.]'s parents had a major disagreement on [Z.W.]'s care. . . . This Court appointed Kids' Voice as GAL for [Z.W.] in October 2014, and several reports have been filed. . . . This lengthy proceeding has taken a toll on the child. . . . [Z.W.] is now nearly 13 years of age.

* * *

5. During the first week of August of 2014, Father gave [Z.W.] prescription medication that was not prescribed for [Z.W.] and which had side effects to him. . . .

6. [Z.W.] was becoming visibly upset, acting out and vomiting when it was time to go to Father's for parenting time during . . . summer 2014. In this same time period, Father moved his new girlfriend, Ashley, who had just turned age 21, along with her 2 year old daughter into his home. Father described defiant behavior on the part of [Z.W.] and indicated that [Z.W.] did not obey Ashley or take direction from her. [Z.W.] told therapists and others about Ashley coming home from the movies drunk; Father explained Ashley's behavior as "giddy" because she was just turning age 21. . . . [T]he Court ordered that [Z.W.] temporarily remain with Mother and that Father have supervised parenting time pending the results of the investigation. . . .

7. [Z.W.]'s counselor Alexandra Swackhamer with Families First, submitted a status report to the Court in 2014, detailing abuse allegations that [Z.W.] had made regarding his Father. . . .

8. [Z.W.] began attending school through Perry Township Schools, which is the school district in which Mother resides. Mother has resided in Perry Township since approximately 2008 when the Parties['] marriage was initially dissolved.

9. When these parents divorced, Father was residing in Franklin Township. He relocated in 2014 to Mooresville School District, but moved again in 2015 to Warren Township. Father's move to Warren Township occurred after [Z.W.] had already been enrolled in and adjusted back to traditional school through Perry Township.

* * *

11. The . . . investigations did not substantiate abuse. The GAL spent many hours with this family and found some of [Z.W.]'s

accusations to be embellished or exaggerated, because he wanted to continue living with Mother.

* * *

13. Around the time of Father's move to Mooresville, he had also moved his girlfriend Ashley and her daughter into his home. Father summoned police to his home within less than a year because Ashley had friends who were staying in Father's home, smoking pot and refusing to leave. During the hearing on 1/19/16, Father asserted that his girlfriend's preschool child was no longer living with them. Although the timing of this event seemed a bit convenient, it was even more interesting that at the time of the final segment on 2/23/16, Father said that although he and Ashley were still dating, Ashley too had moved from his house to her Mother's home. Father blamed these disruptions of his personal life on the custody matter involving [Z.W.] and [Z.W.]'s dislike of Ashley. Father shared these conclusions with [Z.W.]

14. It is clear that among other problems, [Z.W.] was having continuing adjustment issues to Ashley and her daughter living in Father's home. Father could have followed up on a GAL recommendation to take a class on blending families. Instead, Father appears to have asked Ashley to relocate and either in a misguided attempt to have [Z.W.] recognize that Father is supportive of him, or to place blame, he has let [Z.W.] know that [Z.W.]'s relationship with Ashley was the reason this occurred.

15. . . . Father was to take the minor child to all of his counseling appointments during his summer parenting time. Father did not take the minor child to his group therapy during his summer parenting time and would not cooperate with Mother to allow her to continue the child's therapy.

* * *

18. The Guardian Ad Litem has filed several reports to this Court with status updates and findings from his investigation. The GAL has done an excellent job and has made a difference in the life of this minor child. The GAL has not technically seen a change in circumstance such that he would recommend that physical custody be transferred to Mother. The Guardian Ad

Litem has recommended that the Parties share as close to a 50/50 split in parenting time as possible; however, he does note that it may be more practical for [Z.W.] to reside primarily with Mother due to Father's move. . . .

19. All parties agree that [Z.W.] is doing well in his current school. [Z.W.] has an [individualized education program], carries a diagnosis of ADHD and requires some modification in his school curriculum. He is enrolled in a new program in Perry Township that is unique compared to other schools. It is a hybrid of special education classes and regular education classes. [Z.W.] has class with the same group of students, is able to receive one-on-one assistance from school personnel and has extra math classes.

20. All Parties agree that Warren Township where Father resides does not have a program similar to Perry Township and in fact, although the [individual education program] could be transferred to Warren Township, [Z.W.] would have to attend either special education classes or regular classes and would not receive the additional individual assistance. Father has relocated two times and not to Perry Township where [Z.W.] would have continuity in his education. The fact that [Z.W.] has had learning difficulties, was home-schooled for a long period of time and has had emotional issues, including experiencing bullying, leads the Court to the conclusion that [Z.W.] should remain in his present school.

* * *

23. [Z.W.] has attended counseling with either Ms. Swackhamer or Community Health Network on a weekly, bi-weekly, or monthly basis, depending on his needs, since October 2014. Father has only attended one counseling session during this entire time. Mother has attended all counseling sessions except one that was rescheduled by Father, during his parenting time. [Z.W.] has had several doctor appointments since October 2014. Father has only attended one appointment relating to a re-evaluation regarding [Z.W.]'s ADHD medication. After evaluation with both Parties present, [Z.W.]'s doctor has continued to prescribe Strattera for his ADHD, despite Father's

belief that this medication is not needed. According to the GAL, [Z.W.] reports that his medication helps him focus and that [Z.W.] wants to continue taking the medication.

24. Father has stated that he would give [Z.W.] the medication if it was still recommended by his doctor; however, Father had previously taken his child off of the medication over the summer of 2015 despite the Doctor's statement that the medication needed to be either completely discontinued over the summer or it needed to be taken as prescribed. Instead, without informing Mother, Father took [Z.W.] off of the medication during his alternating weeks in the summer against Doctor's recommendations.

* * *

26. Mother seems to have more flexibility and ability to make sure [Z.W.]'s educational, medical and emotional needs are met. . . .


Conclusions of Law


* * *

3. It is in [Z.W.]'s best interest that physical custody be granted to Mother. Since the dissolution settlement, these parents adjusted their agreement to fit [Z.W.]'s education needs by having Mother home-school him. Further, Mother began sharing physical custody as a part of the increased time spent at Mother's house for education.

4. When Father moved to Mooresville and allowed Ashley and her very young child to move in, [Z.W.]'s behavior changed. Although [Z.W.]'s allegations of abuse by Father became increasingly grandiose such that the allegations were rather hard to believe, the child continued to profess fear of being in his Father's home. All parties agree that the child's emotional state was fragile such that [Z.W.] would be so upset as to vomit and act out by screaming, throwing things and running to his room.

5. [Z.W.] has made remarkable progress in his Mother's primary care. . . .

6. There has been a substantial change in the circumstances of the Parties. . . .

7. . . . Probably most confusing for this Court is Father's decision to move first to Mooresville and then to Warren Township when he has been fully aware of the child's special education needs which are now being met in the Perry Township schools.

8. At the time that Mother filed her request to modify custody, there had clearly been a substantial change in [Z.W.]'s interactions with Father. . . .

9. Beginning in the summer of 2014, [Z.W.] was suffering from very significant mental health issues which required and continue to require counseling to keep them under control. [Z.W.]'s mental health providers have indicated a continuing need for him to attend individual counseling. [Z.W.] has also been diagnosed with ADHD and said diagnosis occurred after the Decree was entered in 2008.

10. Probably the most significant change in the factors for [Z.W.] relates to the change in his adjustment to home, school, and community. . . .

* * *

13. Father has made some poor choices with regards to [Z.W.]'s well-being such as giving him a medication not prescribed to him, allowing individuals to stay in the home who are using illegal substances and taking [Z.W.] off of his medication against the recommendation of the child's doctor. Father also acknowledged that [Z.W.] was not adjusting well to Ashley and her daughter residing with him; however, he did not take the GAL's advice to take a class that would help him address blending a family. . . .

14. Mother appears to be more focused on making sure that [Z.W.]'s needs are met per the advice and recommendations of the professionals involved including his doctors and school personnel. Mother has been very involved with making sure [Z.W.] receives counseling and all services needed for the adjustments he has had to undergo since October 2014. . . .

15. In considering the determination of legal custody, Mother

and Father do agree they are presently unable to communicate effectively, thus warranting one parent to be named as [Z.W.]'s legal custodian.

16. Mother has been primarily responsible for [Z.W.]'s educational and medical needs. Father has not been involved with the appointments, nor did he indicate that he would become more involved. Further, the Parties have a major disagreement regarding [Z.W.]'s diagnosis of ADHD and the appropriate treatment for the same. Mother seems to align herself with the recommendations of the professionals and to follow what the professionals advise whereas Father seems more likely, and has actually done so, to act in the manner he believes is appropriate even if it is contradictory to the advice of the professionals. Mother shall be the legal custodian of [Z.W.]

[4]     Appellant's Appendix, Volume 2 at 19-35. Father now appeals.

# Discussion and Decision

## I. Standard of Review

[5]     Child custody modifications are reviewed for an abuse of discretion and we grant latitude and deference to our trial judges in family law matters. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). On appeal, we neither reweigh the evidence nor reassess witness credibility. *Id*. Rather, we consider only the evidence most favorable to the judgment and the inferences flowing therefrom. *Id*.

[6]     Where, as here, the trial court issues findings of fact and conclusions at the request of one of the parties, we apply a two-tiered standard of review. *Maddux v. Maddux*, 40 N.E.3d 971, 974 (Ind. Ct. App. 2015). First, we determine

whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will reverse a trial court's decision if there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We review the trial court's findings of fact using a clearly erroneous standard. *Id.* "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made. We review the conclusions of law using a de novo standard." *Id.* at 974-75.

## II. Physical Custody

[7] Father argues the trial court's decision to modify physical custody of Z.W. was clearly erroneous. Specifically, he claims there is no evidence showing a substantial change in circumstances justifying the modification. We disagree.

[8] A trial court may not modify a child custody order unless the modification is in the best interests of the child and there is a substantial change in at least one of the following factors:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>> (A) the child's parent or parents;
>> (B) the child's sibling; and
>> (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
>> (A) home;

(B) school; and
(C) community.
(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian . . . .

Ind. Code § 31-17-2-21(a); Ind. Code § 31-17-2-8. The trial court shall also consider these factors in determining whether custody modification is in the best interests of the child. Ind. Code § 31-17-2-21(b).

[9] Here, we must first commend the trial court for its thorough findings of fact and conclusions thereon, which has greatly facilitated our review of its decision. As quoted above, the trial court made specific findings detailing Z.W.'s development since Mother's and Father's divorce and the substantial changes that have since occurred. We note Z.W. was diagnosed with ADHD since the original custody order. *See* Ind. Code § 31-17-2-8(6). The findings further indicate Z.W.'s relationship with Mother has blossomed and his relationship with Father has deteriorated. *See* Ind. Code § 31-17-2-8(4)(A). Regardless of whether Z.W.'s allegations of abuse were substantiated, the fact Z.W. made these allegations speaks to a detrimental change of circumstances between Z.W. and Father. It is also apparent Z.W. does not get along with Father's girlfriend, Ashley, an individual who may significantly affect Z.W.'s best interests. *See* Ind. Code § 31-17-2-8(4)(C); Ind. Code § 31-17-2-8(5)(A). Although Father stated Ashley and her child moved out of his home, the trial court did not find these assertions credible: "The convenient timing of Father's assertions that

neither Ashley nor her child reside in his home appears to be a sham. This Court fully expects that once the decision is entered on this modification matter, Father will have his girlfriend and her child back in his home." Appellant's App., Vol. 2 at 30. As to Z.W.'s schooling, the findings establish he is thriving in his Perry Township school where he receives special attention from school personnel. An order awarding Father primary physical custody would force Z.W. to be removed from the school. *See* Ind. Code § 31-17-2-8(5)(B). We conclude the trial court did not abuse its discretion in finding a substantial change in one or more circumstances and awarding Mother primary physical custody of Z.W.

## III. Legal Custody

[10] Father also challenges the trial court's decision naming Mother as Z.W.'s sole legal custodian. Specifically, he claims the decision is not in Z.W.'s best interests. We disagree.

[11] In its discretion, a trial court may award legal custody of a child jointly if the court finds the award would be in the best interest of the child. Ind. Code § 31-17-2-13. "In determining whether an award of joint legal custody . . . would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody." Ind. Code § 31-17-2-15. As noted above, "A court may not modify a child custody order that granted joint legal custody unless (1) the modification is in the best interests of the child; and (2)

there is a substantial change in one or more of the factors a court may consider Indiana Code § 31-17-2-8 when it originally determines custody." *Higginbotham v. Higginbotham*, 822 N.E.2d 609, 611 (Ind. Ct. App. 2004) (citation omitted).

[12] We see no error. We have previously detailed the substantial changes in numerous factors delineated in Indiana Code section 31-17-2-8 in this case. *See supra* Part II. As to whether the decision is in Z.W.'s best interests, Father appears to only challenge the trial court's Conclusion 15, which provides, "In considering the determination of legal custody, Mother and Father do agree that they are presently unable to communicate effectively, thus warranting one parent to be named as [Z.W.]'s legal custodian." Appellant's App., Vol. 2 at 33. Father argues the evidence shows the parents are able to work together to meet Z.W.'s needs. However, Father's argument is merely an invitation for us to reweigh the evidence, which we will not do. *See Miller*, 965 N.E.2d at 108. Nonetheless, we agree with the trial court that awarding Mother sole legal custody is in Z.W.'s best interests. Z.W. has lived primarily with Mother of late and Mother has therefore been primarily responsible for Z.W.'s medical and educational needs. Mother has fully participated in Z.W.'s schooling, attended Z.W.'s doctor appointments and counseling sessions, and followed the recommendations of Z.W.'s doctors, counselors, and educators. As to Father, we note Mother sought modification of custody due to Father providing Z.W. with a prescription pill not prescribed for Z.W. In addition, Father has demonstrated a lack of willingness to follow doctor's recommendations, evidenced by Father's assertions that Z.W. does not need medication and then

taking Z.W. off that medication on his own initiative. As the trial court noted, "Father seems to assume at times that he knows what is best for [Z.W.] regardless of the opinions of the professionals." Appellant's App., Vol. 2 at 33. We conclude the trial court did not abuse its discretion in awarding sole legal custody to Mother.

# Conclusion

[13] The trial court did not abuse its discretion in awarding Mother primary physical custody and sole legal custody. Accordingly, we affirm.

[14] Affirmed.

Kirsch, J., and Barnes, J., concur.