## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 25 2017, 9:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert J. Nice
Hayleigh J. Neumann
The Nice Law Firm, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Randy Drake,<br>*Appellant,*<br><br>v.<br><br>Jenita McMillan,<br>*Appellee.* | April 25, 2017<br><br>Court of Appeals Case No.<br>27A02-1608-JP-1915<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Dana J. Kenworthy, Judge<br>The Honorable Brian F. McLane, Magistrate<br><br>Trial Court Cause No.<br>27D02-1107-JP-507 |

**Barnes, Judge.**

## Case Summary

Randy Drake ("Father") appeals the trial court's denial of his petition to modify custody of his child, R.M.-D. We affirm.

## Issue

The sole restated issue before us is whether the trial court's denial of Father's petition to modify custody was clearly erroneous.

## Facts

R.M.-D. is the child of Father and Jenita McMillan ("Mother"); he apparently was born in 2011.[1] Father was at the time and still is married to Julie Drake ("Stepmother"), with whom Father has three older children. Father and Stepmother have been married for twenty-five years and have lived in the same house for over six years. Father lives and works in Kokomo and Mother lives and works in Marion.

After the original custody decree, Father filed a motion to modify. That motion resulted in an order on January 27, 2015, establishing that Father had custody of R.M.-D. from every Friday at noon to Monday at 6:00 p.m. and Mother had custody from 6:00 p.m. Monday to noon on Friday. Father works from 6:00 a.m. to 4:30 p.m., Monday through Thursday, and Mother works from 2:00

---

[1] His birthdate is not in the record before us, but the trial court's August 8, 2016 order states that he was then five years old and this paternity action was initiated in July 2011.

p.m. Saturday to 6:00 a.m. Sunday and 2:00 p.m. Sunday to 6:00 a.m. Monday. On March 30, 2016, Father filed another motion to modify custody of R.M.-D. A hearing on the matter was twice continued at Mother's request and was finally held on August 1, 2016.

[5] At the hearing, evidence was presented that in January 2016, Mother had to move because of a mortgage foreclosure on her previous residence and had moved to a rental house. Mother believed that the rental house was in a better location than her prior house. Mother also had the gas in her home turned off for approximately three weeks, which affected only the stove. Mother testified that she had financial difficulties prior to the foreclosure based in part on one to two thousand dollars in debt incurred in previous custody proceedings with Father; she also testified that she had financial difficulties prior to her gas being shut off because Father had not been paying child support. The CCS indicates that on December 3, 2015, Mother filed a rule to show cause why Father should not be held in contempt for failing to pay previously-ordered attorney fees; on January 11, 2016, Father paid those fees. Also, the records of the trial court clerk indicated that, for some reason, Mother had not received child support from Father after May 20, 2016 and until the date of the modification hearing.[2]

[6] Additionally, Mother received three infraction charges between January and May 2016 for driving with a suspended license, which Mother said resulted

---

[2] Father testified that he was unaware of why Mother would not have been receiving payments, which were supposed to be automatically withdrawn from this paycheck.

from unpaid parking tickets. Mother continued to drive R.M.-D. places while her license was suspended. She presented evidence at the hearing that she had completed and paid everything necessary to have her license reinstated. On May 17, 2016, Mother also was charged with Level 6 felony intimidation and Class B misdemeanor battery. The charges apparently were related to conduct against Mother's brother's girlfriend, but the details and ultimate disposition of the case is not in the record.

[7] Mother has three other children besides R.M.-D. Her oldest son had moved out of the house at age seventeen to live with his father because he did not follow Mother's rules and often used inappropriate language. R.M.-D. sometimes repeated such language as well, which Father corrected. At some time one of Mother's other sons, a sixteen-year-old, was facing charges in juvenile court for unspecified conduct, apparently related to fraud of some kind. This case was resolved by the time of the modification hearing.

[8] R.M.-D. was scheduled to start kindergarten immediately after the modification hearing. Father had enrolled him at an "A"-rated school in Kokomo, while Mother had enrolled him in a public school in Marion. Father also enrolled R.M.-D. in basketball and baseball youth leagues. Mother never attended any of his games. Mother and Father both apparently enrolled R.M.-D. in separate preschools and he attended both of them. Father enrolled R.M.-D. in a private preschool because he did not believe he was learning enough in the one Mother had enrolled him in, and he also disagreed with Mother not always compelling R.M.-D. to attend preschool. Mother disputed Father's account of R.M.-D.'s

preschool progress.  Both Mother and Father testified as to the difficulties they have communicating regarding R.M.-D.'s care.

[9]     On August 8, 2016, the trial court entered its order denying Father's motion to modify custody.  It entered limited sua sponte findings with its order that read in part:

> 5.     Since the last order:
>
>> a.     Mother has been evicted from her home in January, 2016;
>
>> b.     One of Mother's children from a prior relationship was arrested for charges in Juvenile Court;
>
>> c.     Mother has had her gas turned off.  Mother's stove was the only appliance that operated on gas.  Mother indicates the stoppage of service was for approximately 3 weeks;
>
>> d.     Mother has pending driving offenses and criminal charges.  The driving offenses all center around the suspension of her driver's license. . . .  Mother indicates her driving privileges should be reinstated soon.  Mother has a pending case in Superior Court III for Intimidation (Level 6 Felony) and Battery (Class B Misdemeanor).  This matter is still pending.
>
>> e.     Mother continues to drive on her suspended driver's license;

f.       Father enrolled the child to play basketball and baseball.  Mother never attended any of the games.  Father contends Mother received copies of the game schedule, but Mother disputes ever receiving the schedule;

g.       The parties continue to have no communication between them;

*  *  *  *  *

i.       Father continues to be married to his wife of 20+ years.  The child has a good relationship with his step-mother.

6.       Both parents desire to register the child for kindergarten in their own community.  Although Mother has continued to demonstrate a significant degree of instability in her life, awarding Father custody of the child with a standard parenting time order would leave Mother with practically no time with the child given her work schedule.  Further, given the absolute breakdown of communication between the parties, there is no indication that the parties would work out a mutually agreeable schedule absent court intervention.  Accordingly, the court finds that it is in the child's best interests that the prior custody order remain in place. . . .

App. pp. 11-12.  Father now appeals.

## Analysis

The trial court's findings in this case were entered sua sponte.  "In such a case, the specific findings control only with respect to issues they cover, and a general judgment standard applies to issues outside the findings."  *Montgomery v.*

*Montgomery*, 59 N.E.3d 343, 349 (Ind. Ct. App. 2016), *trans. denied*. We will set aside the trial court's findings or judgment only if they are clearly erroneous. *Id.* "A finding is clearly erroneous only if there are no facts or inferences drawn therefrom to support it." *Id.* Additionally, "[w]e may affirm a general judgment with sua sponte findings upon any legal theory supported by the evidence introduced at trial." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013). Sua sponte findings control as to the issues upon which the court has found, but they do not otherwise affect our general judgment standard of review, "and we may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Id.*

[11]     We grant "'latitude and deference to our trial judges in family law matters.'" *Steele–Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016) (quoting *In re Marriage of Richardson*, 622 N.E.2d 178 (Ind. 1993)). "Appellate courts 'are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence.'" *Id.* (quoting *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002)). "In order to reverse a trial court's ruling, it is not enough that the evidence might have supported a different conclusion." *Montgomery*, 59 N.E.3d at 350. Rather, the evidence must positively require the conclusion contended for by appellant before we may reverse. *Id.* We may not reweigh the evidence or reassess witness credibility, and must view the evidence in a light most

favorable to the judgment. *Id.* Although we must be highly deferential to trial courts in custody cases, that deference is not absolute and reversal is possible. *Id.*

[12] Pursuant to Indiana Code Section 31-14-3-6, a trial court in a paternity proceeding may not modify a child custody order unless a noncustodial parent shows both that modification is in the best interest of the child, and there has been a substantial change in one or more of the factors listed under Indiana Code Section 31-14-13-2.[3] Those factors are:

> (1)     The age and sex of the child.

> (2)     The wishes of the child's parents.

> (3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

> (4)     The interaction and interrelationship of the child with:

>> (A) the child's parents;

>> (B) the child's sibling; and

---

[3] In his brief, Father cites the statutes governing child custody following marital dissolution, Indiana Code Secctions 31-17-2-8 and 31-17-2-21. The substance of these provisions is nearly identical to those governing paternity proceedings.

(C) any other person who may significantly affect the child's best interests.

(5)   The child's adjustment to the child's home, school, and community.

(6)   The mental and physical health of all individuals involved.

(7)   Evidence of a pattern of domestic or family violence by either parent.

(8)   Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

[13]   "A parent seeking modification of custody bears the burden of proving that the existing custody order should be altered." *Montgomery*, 59 N.E.3d at 350. "Indeed, this 'more stringent standard' is required to support a change in custody, as opposed to an initial custody determination where there is no presumption for either parent because 'permanence and stability are considered best for the welfare and happiness of the child.'" *Steele-Giri*, 51 N.E.3d at 124 (quoting *Lamb v. Wenning*, 600 N.E.2d 96, 98 (Ind. 1992)).  We further note that when reviewing the *denial* of a motion to modify custody, as opposed to the *granting* of such a motion, the appellant is appealing from a negative judgment. *Riggen v. Riggen*, No. 67A04-1606-DR-1312, slip op. p. 4 (Ind. Ct. App. March 3, 2017).  We will not reverse such a judgment unless the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.* at 5.

"When evaluating whether a change of circumstances has occurred that is substantial enough to warrant a modification of custody, the context of the whole environment must be judged . . . ." *Montgomery*, 59 N.E.3d at 350. "'[T]he effect on the child is what renders a change substantial or inconsequential.'" *In re Marriage of Sutton*, 16 N.E.3d 481, 485 (Ind. Ct. App. 2014) (quoting *Jarrell v. Jarrell*, 5 N.E.3d 1186, 1193 (Ind. Ct. App. 2014), *trans. denied*). "'If one parent can demonstrate that the other has committed misconduct so egregious that it places a child's mental and physical welfare at stake, the trial court may modify the custody order.'" *Maddux v. Maddux*, 40 N.E.3d 971, 979 (Ind. Ct. App. 2015) (quoting *Hanson v. Spolnik*, 685 N.E.2d 71, 78 (Ind. Ct. App. 1997), *trans. denied*). In a custody modification proceeding, the trial court's consideration generally should be limited to evidence on matters occurring after the last custody proceeding between the parties. *See* Ind. Code § 31-14-3-9.

[15] We also note that Mother did not file an appellee's brief. "When an appellee fails to submit a brief, we do not undertake the burden of developing appellee's arguments, and we apply a less stringent standard of review, that is, we may reverse if the appellant establishes prima facie error." *Meisberger v. Bishop*, 15 N.E.3d 653, 656 (Ind. Ct. App. 2014). This rule relieves us of the burden of controverting arguments advanced in favor of reversal, which properly rests with the appellee. *Id.* Prima facie error is error at first sight, on first appearance, or on the face of it. *J.K. v. T.C.*, 25 N.E.3d 179, 181 (Ind. Ct. App. 2015). Still, we are obligated to correctly apply the law to the facts in the record

to determine whether reversal is required. *Tisdale v. Bolick*, 978 N.E.2d 30, 34 (Ind. Ct. App. 2012). We also must keep in mind that decisions about parenting time require us to give foremost consideration to the child's best interests. *Meisberger*, 15 N.E.3d at 656.

[16] Much of Father's argument is based on findings the trial court did not expressly make. He contends the trial court failed to consider the required statutory factors for a custody modification, including R.M.-D.'s relationships with his parents and siblings, his adjustment to home, school, and community, and Mother's mental health as reflected by her run-ins with law enforcement. However, we emphasize that the trial court's findings here were entered sua sponte. It was under no obligation to enter findings that comprehensively applied the evidence in the record to the statutory modification factors. And, we may affirm the trial court's judgment based on the record as a whole and may look beyond its findings to do so.

[17] The trial court's findings acknowledge that Mother has had her difficulties. It is troubling that Mother repeatedly was ticketed for driving with a suspended license and admittedly continued driving R.M.-D. places with a suspended license. However, the only evidence in the record as to why Mother's license was suspended was because of a failure to pay parking tickets. She was not driving while intoxicated or recklessly; in other words, there is no evidence she was directly endangering R.M.-D. by engaging in this conduct. The same is true of her pending charges for intimidation and battery, which was alleged to be committed against her brother's girlfriend. These charges were unresolved at

the time of the modification hearing and there was no evidence as to how they impacted R.M.-D. or whether the incident took place in front of him.

[18] Father also directs us to the evidence regarding two of Mother's older children. One of the children moved out of the house before graduating from high school because he did not want to comply with Mother's rules and used inappropriate language, some of which R.M.-D. began using. The other child was arrested and was involved with juvenile court for unspecified conduct, but which Mother described as concerning fraud. This evidence may indicate that Mother's older children could be incorrigible, and may reflect on her parenting, but again, aside from some questionable language from R.M.-D., it is unclear that the behavior of Mother's older sons was so damaging that R.M.-D.'s mental or physical health was endangered or that a change of custody was mandated.

[19] There also was evidence presented regarding R.M.-D.'s pre-schooling and participation in sports, with Father contending R.M.-D. did better in a preschool Father enrolled him in and that Mother was not supportive of the sports, given her failure to attend any games. Mother contested Father's description of R.M.-D.'s academic progress, or lack thereof, in the preschool she enrolled him in as opposed to Father's; in any case, we are not convinced that questionable progress while in preschool should be a basis for modifying child custody. The same can be said for Mother not insisting that R.M.-D. attend every day of preschool. As for Mother's non-support of R.M.-D.'s athletics, again it is unclear what a change of custody would alter in that

respect, and the emphasis to be placed on a child's athletics is a matter upon which reasonable parental minds could differ. If anything, the fact that Father is able to encourage and arrange R.M.-D.'s participation in athletics under the current custody arrangement is an indication that it need not be changed at this time.

[20] Evidence also was presented regarding Mother having to move in January 2016 after foreclosure on her house, and having her gas utility service shut off for about three weeks. Mother testified that in part, her financial difficulties stemmed from prior custody disputes with Father and an interruption in child support payments from Father in the summer of 2016. Regardless of the cause, Mother also testified that her new rental residence was in a better location than the previous residence; there is no evidence Mother has been homeless and no evidence that the present residence is inadequate for raising a child. Additionally, the interruption in gas service was not extremely detrimental, given that it only affected Mother's stove. There is a lack of evidence that R.-M.D. was significantly negatively impacted by Mother's move from one residence to another or the temporary cessation of gas service to the home.

[21] More generally, Mother's alleged "instability" does not appear to be a new phenomenon, nor does Father's questioning of her raising of her other children. During closing argument, counsel for Father stated in part:

> I have [a] client that has raised three children successfully, they have been athletic, they have been scholar [sic], you met them all last time and saw what he and his wife have done in their

household. Again avoiding political correctness her children are thugs. They have been in this Courtroom, you heard about what's still going on with the, she told us they are being pulled away for, by the police from her household. This is the environment that [R.M.-D.] is in, it is a sess [sic] pool, it is an unstable environment. . . . [Habit for] humanity gives them a house with a minimum payment and they can't stay there, they've been foreclose [sic] out of that, you don't hear about that too often but that's what happened here. Utilities where shut off before we talked about that last time and its happened again.

Tr. pp. 110-11. "[A] petition to modify is not a vehicle to relitigate the initial custody determination as to who might make the better parent." *Dwyer v. Wynkoop*, 684 N.E.2d 245, 249 (Ind. Ct. App. 1997), *trans. denied*. In large part, that appears to be what Father has attempted to do here.

[22] Finally, we address Father's contention that it was improper for the trial court to find that a modification of custody could result in very limited parenting time for Mother, given her current work schedule. We cannot dismiss this as an improper consideration. There was little evidence presented as to Mother's ability to change her work schedule, which required her to work for most of every weekend. A modification of custody as sought by Father necessarily would limit Mother's parenting time to weekends. "[N]ot only does a noncustodial parent have a presumed right of parenting time, but the child has the correlative right to receive parenting time because it is presumed to be in the child's best interest." *Perkinson v. Perkinson*, 989 N.E.2d 758, 764 (Ind. 2013). A change in custody that would severely limit Mother's parenting time

presumably would not be in R.M.-D.'s best interests and the trial court did not err in noting that fact.

[23] This is a case in which, admittedly, the evidence conceivably could have supported a different result. But that is not enough to compel reversal on appeal, particularly given that Father had the burden of demonstrating the necessity of a modification of custody. In the absence of compelling evidence that R.M.-D. currently is endangered by being in Mother's primary custody, we decline to substitute our judgment for that of the trial court in such a highly fact-sensitive matter.

## Conclusion

[24] The trial court's denial of Father's petition to modify custody was not clearly erroneous. We affirm.

[25] Affirmed.


Kirsch, J., concurs.

Robb, J., concurs in result without opinion.