

FILED

Jul 28 2016, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bryan L. Ciyou
Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Daniel G. Petrie
Henthorn, Harris & Weliever
Crawfordsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jessica Robertson, <br> *Appellant-Petitioner,* <br><br> V. <br><br> Brian Robertson, <br> *Appellee-Respondent.* | July 28, 2016 <br><br> Court of Appeals Case No. <br> 54A01-1509-DR-1374 <br><br> Appeal from the Montgomery <br> Superior Court <br><br> The Honorable Heather Dennison, <br> Judge <br><br> Trial Court Cause No. <br> 54D01-0912-DR-517 |

**Pyle, Judge.**

## Statement of the Case

In this child custody case, Jessica Robertson ("Mother") argues that the trial court abused its discretion in modifying custody of the parties' two young children in favor of Brian Robertson ("Father"). On cross-appeal, Father

argues that this Court does not have jurisdiction over the matter because Mother failed to timely file her Notice of Appeal. In light of Mother's attempt to perfect a timely appeal and the constitutional dimensions of the parent-child relationship, we review Mother's appeal on the merits. Further, because the evidence supports the trial court's modification of custody in favor of Father, we find no abuse of discretion and affirm.

We affirm.

## Issues

1. Whether this appeal is reviewable on the merits.

2. Whether the trial court abused its discretion in modifying custody in favor of Father.

## Facts

Mother and Father's marriage was dissolved in 2010. At that time, the dissolution court granted Mother custody of the parties' two children, K.R., born in 2006, and C.R., born in 2007. Mother married Damien Terry ("Stepfather") in October 2014. In February 2015, Father filed a petition to modify custody and a request for a guardian ad litem ("GAL"). In the petition, Father alleged that Stepfather was "a bad influence and example for the children." (App. 23). Specifically, Father alleged that Stepfather "use[d] illegal substances and ha[d], at times, been the sole caretaker of the children." (App. 23).

[4] The trial court appointed a GAL, which filed its report in July 2015. The trial court subsequently held a two-day hearing on Father's petition on August 7 and August 12, 2015. Testimony at the hearing revealed that Father was stationed in the military at Fort Riley, Kansas. He had requested an early discharge because of family issues and expected to be released from his military obligation within sixty days. He planned to relocate to Crawfordsville, Indiana, to be closer to his children and was seeking employment in the area. He also planned to further his education at Ivy Tech. At the time of the hearing, Father spoke with the children on the phone two to three times per week and had just spent ten days with them.

[5] Father expressed concern that when he talked to his children on the telephone, Stepfather frequently interrupted the conversation and told the children what to say. At times, the children told Father that they could not answer his questions because Stepfather would be angry. Father also expressed concern that K.R. was in the car with Stepfather when Stepfather was arrested for driving while suspended. Father was also worried that Stepfather has fallen asleep holding a cigarette in his hand. Father testified that he had remained close to Mother's family, and that Mother's mother ("Grandmother") and Mother's sister ("Aunt") both supported his request for custody of the children.

[6] Grandmother testified that she has observed significant changes in the children's behavior since Mother married Stepfather. Specifically, K.R. recently cried and asked Grandmother to call the police so that he would not have to return to Mother's home. Grandmother explained that Mother used to

be very attentive to her children but had moved them to "the back burner" following her marriage to Stepfather. (Tr. 123). Grandmother opined that it was not in the children's best interests to continue in Mother's custody.

[7] Mother's friends, Adam and Nekisha Shahan ("Adam" and "Nekisha"), who also testified at the hearing, noticed that K.R. and C.R. had become lethargic and withdrawn. Adam and Nekisha's children regularly played with K.R. and C.R. until Mother married Stepfather. At the time of the hearing, Mother regularly denied requests for the children to play together. Adam further testified that the children now cowered when he reached out to hug them or pat them on the head. He also testified that he attended a family Christmas dinner with Mother's family in 2014. At one point, when K.R. walked past Stepfather and said nothing, Stepfather grabbed K.R. by the arm and screamed, "I told you it's not time to open presents yet so go sit down." (Tr. 84). That same day, Stepfather passed out at the dinner table while he was eating and later rested his head on a window sill while standing at the sink. Adam also saw Stepfather "down on one knee talking to this cat in weird voices, just like, like he was having a conversation with it." (Tr. 85). Nekisha, a registered nurse that routinely works with addicts and patients abusing prescription medications, believed that Stepfather was abusing controlled substances. She also believed that it was not in the children's best interests to continue in Mother's custody.

[8] The GAL testified that Stepfather did not treat the children kindly and had a forceful attitude with them. The GAL pointed out that Stepfather had a criminal record, was unemployed, and tried to isolate Mother and the children

from Mother's family and friends. The GAL recommended that custody of the children be placed with Father because: (1) Mother placed her relationship with Stepfather ahead of her relationship with her children; (2) Stepfather was not a proper role model; and (3) it was not in the children's best interests to continue in Mother's custody. The GAL agreed that Stepfather "coming into the picture [was] a continuing and substantial change of circumstances." (Tr. 314).

[9] During the hearing, Stepfather admitted that he had a criminal history that included convictions for burglary, theft, unlawful possession of a syringe, possession of a synthetic drug, and driving while suspended. He also admitted that he took prescription pain relievers for his back, including hydrocodone, percocet, and oxycodone, and neurotonins, including gabapentin, for nerve damage in his legs. He admitted that he had hit C.R. for playing at the dinner table and that he had driven with K.R. in the car when he knew that his license was suspended.

[10] As part of its consideration of changed circumstances, the trial court interviewed K.R. in chambers. However, the interview was not recorded. At the end of the two-day hearing, the trial court orally concluded that "based upon the evidence that the child[ren]'s welfare . . . is at risk in the continued custody of their mother, . . . the children shall be placed immediately in the custody of their father until further order of the Court." (Tr. 322). Because Mother had requested special findings pursuant to Indiana Trial Rule 52(A), the trial court gave the parties fourteen days to submit their proposed findings. That same day, the trial court issued a written provisional order which awarded

Father temporary emergency custody until further order of the court and ordered the parties to submit proposed findings of fact and conclusions no later than August 26, 2015. The trial court also ordered Father to notify the court within forty-eight hours of "who shall be named as temporary custodian in case Father becomes unable or unwilling to continue as custodian due to his death or disability." (App. 16).

[11] Two days later, on August 14, 2015, Father filed a motion to appoint Aunt as temporary custodian for the children, which the trial court granted. That same day, Mother filed an objection to the form of Father's motion as well as a motion to restore primary custody to her should Father leave the area without the children. On August 18, the trial court issued an order, which denied Mother's request to restore primary custody to her.

[12] Both parties filed proposed findings of fact and conclusions on August 26, 2015. On September 11, 2015, before the trial court entered a final custody modification order, Mother filed a Notice of Appeal, wherein she stated that she was appealing the trial court's: (1) August 12 order regarding temporary emergency custody; (2) August 14 order regarding the appointment of a temporary custodian; and (3) August 18 order regarding Mother's objection to the form of Father's motion to appoint a temporary custodian and motion to restore physical custody.

[13] Shortly thereafter, on October 19, Father filed a notice of relocation and a motion to terminate the temporary custodian, wherein he explained that he had

been honorably discharged from the army and had returned to Indiana where he was living with Grandmother. An entry in the Chronological Case Summary ("CCS") reveals that the trial court took no action on the motion "due to jurisdiction being with Indiana Court of Appeals." (App. 13).

[14] Father also filed in this Court a Motion to Dismiss Mother's appeal. Specifically, Father argued that Mother's appeal should be dismissed because it was not the appeal of a final order. According to Father, the trial court could not issue Mother's requested findings of fact and conclusions until the appeal was dismissed. Mother responded that these appealed orders, which modified custody "under the guise of being 'temporary'" and appointed a third party as the Children's guardian, were "*de facto* if not actual, final custody [o]rders." (Mother's Response 2). This Court's motions panel denied Father's motion to dismiss, temporarily stayed the appeal, and ordered the trial court to issue its final findings of fact and conclusions on Father's custody modification petition.

[15] The trial court issued its final order, which included ten pages of findings of fact and conclusions, on January 19, 2016. In the order, the trial court concluded that based on the evidence presented at the hearing, modification of custody in favor of Father was in the children's best interests. The court further concluded that "there ha[d] been a substantial change to one or more of the statutory factors for the Court's consideration regarding custody such that a modification [was] necessary." (App. 48). According to the trial court's order:

> Mother ha[d] supplanted the best interests of the children with her own desires and her relationship with her now husband.

Mother [was] certainly free to choose with whom she want[ed] to be in a relationship but when she [did] so at the detriment to the children, she [had to] live with the consequences. It [was] irrefutable that the children [had] been adversely affected by the current circumstances.

(App. 48).

In March 2016, Father filed with this Court a second motion to dismiss Mother's appeal and a request for attorney fees. The gravamen of his argument was that Mother had failed to file a Notice of Appeal after the trial court had issued its final order and that her appeal of the August 2015 orders was an impermissible interlocutory appeal that had not been certified. Mother responded that Father's second motion to dismiss was identical to his first motion to dismiss, which had been denied. The motions panel denied Father's second motion to dismiss and ordered Father to file his appellate brief within thirty days of the date of its order.

Mother now appeals the trial court's modification of custody in favor of Father.

## Decision

Mother argues that the trial court erred in modifying custody in favor of Father. On cross-appeal, Father resurrects his motion to dismiss arguments, contending that this Court does not have jurisdiction over the matter. Because Father's argument on cross-appeal is potentially dispositive, we address it first.

### 1. Review on the Merits

[19]     On cross-appeal, Father argues that this Court does not have jurisdiction over the matter. The gravamen of his argument is that Mother improperly filed a Notice of Appeal for the August 2015 interlocutory order and then failed to properly file a Notice of Appeal after the trial court issued its "final appealable order in the form of the trial court's findings of fact and conclusions of law." (Father's Br. 5).

[20]     First, we note that the motions panel previously denied Father's motions to dismiss on the same issues. We are reluctant to overrule orders issued by the motions panel unless we have determined that there is clear authority establishing that the motions panel erred. *Estate of Mayer v. Lax, Inc.,* 998 N.E.2d 238, 245 (Ind. Ct. App. 2013), *trans. denied*. We find no such authority in this case. Rather, although cited by neither party, the holding in *In re Adoption of O.R.*, 16 N.E.3d 965 (Ind. 2014), is instructive on this issue and supports the motions panel's decisions.

[21]     In *O.R.*, the trial court entered a May 9, 2013, order, which concluded that Father's consent to O.R.'s adoption was not required because Father had failed to communicate with and support O.R. The Notice of Appeal was due June 10, 2013. On June 6, 2013, Father, stating that he was acting on the advice of his trial counsel, wrote a letter to the trial court clerk requesting the appointment of appellate counsel for the purpose of appealing the May 9 order. Father's counsel did not file a Notice of Appeal. However, on June 19, 2013, nine days after the Notice of Appeal was due, trial counsel filed a motion to

withdraw. The trial court granted the motion and entered an order appointing appellate counsel on July 3. On July 18, Father's counsel filed an amended Notice of Appeal. Counsel argued that Father's June 6 pro se letter to the trial court clerk should be deemed a timely filed Notice of Appeal.

[22] Although the motions panel granted Father's petition to accept the amended Notice of Appeal, the writing panel of this Court sua sponte dismissed Father's appeal on grounds that it lacked subject matter jurisdiction because Father did not timely file his Notice of Appeal. *See In re Adoption of O.R.,* No. 21A01-1307-AD-322, 2014 WL 819428 (Ind. Ct. App. Feb. 28, 2014). The Indiana Supreme Court granted transfer and concluded that although a party forfeits its right to appeal for failing to timely file a Notice of Appeal, this untimely filing is not a jurisdictional defect depriving the appellate courts of authority to entertain the appeal. *O.R.*, 16 N.E.3d at 971 (citing Ind. Appellate Rule 9(A)). Rather, the Indiana Supreme Court explained that "timely filing relates neither to the merits of the controversy nor to the competence of the courts on appeal to resolve the controversy." *Id.* Instead, the timely filing of a Notice of Appeal is jurisdictional only in the sense that it is a Rule-required prerequisite to the initiation of an appeal in the Court of Appeals. *Id.*

[23] The Indiana Supreme Court, therefore, concluded that although Father's untimely filing of his Notice of Appeal resulted in Father losing his right to appeal, the question was whether there were "extraordinarily compelling reasons" why the appeal should have been restored. *Id.* This question was answered in the affirmative for three reasons. First, the Appellate Rules

themselves provide a mechanism allowing the Court to resurrect an otherwise forfeited appeal. *See* App. R. 1 (providing in relevant part that the "Court may, upon the motion of a party or the Court's own motion, permit deviation from these Rules"). *Id.* at 972. Second, Father attempted to perfect a timely appeal when he sought appointment of appellate counsel for the purpose of appealing the decision and then filed an amended Notice of Appeal, which the motions panel accepted as being sufficient. *Id.* Third, a parent's interest in the custody of his child is a fundamental liberty interest, and the parent-child relationship is one of the most valued relationships in our culture. *Id.*

[24] We reach the same result in the case before us for the same reasons. Specifically, in light of: (1) Appellate Rule 1; (2) Mother's attempt to perfect a timely appeal by filing the September 2015 Notice of Appeal, which the motions panel accepted as being sufficient; and (3) the constitutional dimensions of the parent-child relationship, we conclude that Mother's appeal also deserves a determination on the merits.

**2. Custody Modification**

[26] Mother argues that the trial court abused its discretion in modifying custody in favor of Father.[1] A trial court's custody determination is afforded considerable

---

[1] Mother also argues that the trial court erred in: (1) appointing a third-party as temporary custodian; and (2) entering a general judgment when special findings were requested by Mother. However, both of these issues arise from the August 2015 provisional order. That order was extinguished by the final order issued in January 2016. *See Mosser v. Mosser*, 729 N.E.2d 197, 200 n. 3 (Ind. Ct. App. 2000) (explaining that the provisional order merges with and is extinguished by the final order). These issues are therefore moot. *See*

deference on appeal as it is the trial court that sees the parties, observes their conduct and demeanor, and hears their testimony. *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 945-46 (Ind. Ct. App. 2006). Thus, on review, we will not reweigh the evidence, judge the credibility of witnesses, or substitute our judgment for that of the trial court. *Id.* at 946. We will reverse the trial court's custody determination only if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Id.*

[27] Where, as here, the trial court issued findings of fact and conclusions at the request of one of the parties, we apply a two-tiered standard of review. *Maddux v. Maddux*, 40 N.E.3d 971, 974 (Ind. Ct. App. 2015). First, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* The trial court's findings are controlling unless the record includes no facts to support them either directly or by inference. *Id.* Legal conclusions, however, are reviewed de novo. *Id.* at 975. We set aside a trial court's judgment only if it is clearly erroneous. *Id.* at 974. "Clear error occurs when our review of the evidence most favorable to the judgment leaves us firmly convinced that a mistake has been made." *Id.* at 974-75.

[28] The trial court may modify a child custody order when: "(1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider under section 8 and, if

---

*Francies v. Francies*, 759 N.E.2d 1106, 1110-11 (Ind. Ct App. 2001) (explaining that final custody determination renders provisional custody determination moot), *reh'g denied*, *trans. denied*.

applicable, section 8.5 of this chapter." IND. CODE § 31-17-2-21. The trial court is also required to consider the factors of section 8, which include: (1) the child's age and sex; (2) the wishes of the parents; (3) the child's wishes; (4) the relationship the child has with his or her parents, siblings, and others; (5) the child's adjustment to home, school, and community; (6) the mental and physical health of all involved; (7) any evidence of domestic or family violence; and (8) any evidence that the child has been cared for by a defacto custodian. I.C. § 31-17-2-21; I.C. § 31-17-2-8(1)-(8).

[29] Here, Mother contends we "should reverse the trial court's order modifying custody to Father as there is no evidence in the Record to show a substantial change in circumstances relating to the Children." (Mother's Br. 17). However, our review of the evidence reveals that the children's relationships with family and friends have changed since Mother married Stepfather. Specifically, the formerly carefree and talkative children have become withdrawn and lethargic. They are no longer allowed to spend as much time as they previously did with family and friends, and when the children do see friends, they cower when the friends attempt to hug them. In addition, Mother has been less attentive to the children since she married Stepfather.

[30] The evidence further reveals that Stepfather has shown signs of abusing prescription medication for back pain and nerve damage. At a family event, he passed out mid-bite at the dinner table and exhibited odd behavior by talking to a cat. Another time, he fell asleep while smoking a cigarette. Stepfather also slapped C.H. for laughing at the dinner table and was arrested for driving while

suspended when K.R. was in the car. In addition, the trial court met in chambers with K.R., who had previously asked Grandmother to call the police so that he would not have to return to Mother's home.

[31] This evidence supports the trial court's conclusion that there has been a substantial change in circumstances relating to the children and that modification of custody in favor of Father is in their best interests. The trial court did not abuse its discretion in modifying custody in favor of Father.

[32] Affirmed.

Kirsch, J., and Riley, J., concur.