## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 29 2017, 10:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| John P. Brinson | Craig Goedde |
| Evansville, Indiana | Johnson, Carroll, Norton, Kent & Goedde, P.C. |
| | Evansville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Valerie Jamison, | March 29, 2017 |
| *Appellant-Respondent,* | Court of Appeals Case No. 82A01-1608-JP-1932 |
| v. | Appeal from the Vanderburgh Superior Court |
| Mason Holden, | The Honorable Renee Ferguson, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 82D01-1202-JP-82 |

**Robb, Judge.**

# Case Summary and Issue

Valerie Jamison ("Mother") appeals the trial court's order modifying custody of her child, J.H., from her to the child's father, Mason Holden ("Father"). She raises several issues for our review, which we consolidate and restate as one: whether the trial court denied her due process by allowing her counsel to withdraw on the day of the hearing, denying her a continuance to find other counsel, and then not allowing her to present evidence, cross-examine witnesses, or be heard on her own behalf at the custody modification hearing. Concluding the trial court denied Mother due process by the manner in which it conducted the modification hearing, we reverse and remand.

# Facts and Procedural History

Father established paternity of J.H. in 2012. Mother had primary custody of J.H. In June 2015, Mother was arrested, and on June 26, 2015, the Indiana Department of Child Services ("DCS") opened child in need of services ("CHINS") cases with respect to J.H. and Mother's other child.[1] Also on June 26, 2015, Father filed in the paternity case an emergency petition to modify custody, requesting custody of J.H. be granted to him and Mother's parenting time be restricted "to alleviate any harmful issues to the child." Appellant's

---

[1] Father is not the parent of Mother's other child. The events in J.H.'s case have had no impact on the other child's CHINS case; as of the custody modification hearing in this case on June 13, 2016, that child remained a CHINS and was in a foster home.

Appendix, Volume 2 at 18. At the CHINS initial hearing on June 30, 2015, the CHINS court placed J.H. with Father. Mother was represented in both the CHINS and the paternity cases by private counsel.

[3] In October 2015, J.H.'s CHINS and paternity cases were consolidated and the paternity court assumed jurisdiction. The parties agreed Father would have temporary custody of J.H. pending a modification hearing and Mother was given supervised parenting time. DCS then terminated its wardship of J.H. in the CHINS case. A modification hearing was scheduled for June 13, 2016.

[4] On June 7, 2016, Mother's counsel filed a motion to withdraw, alleging she had been unable to communicate with Mother and Mother had not maintained her contractual obligation to counsel. Counsel appeared at the scheduled modification hearing on June 13 and the trial court granted the motion to withdraw without objection from Mother. In sorting out who was in the courtroom and who should be allowed to stay before beginning the hearing, the following discussion occurred:

> Court: And, [Mother], did you intend to have your [m]other testify?
> Mother: I did not know that it was gonna – I thought I was gonna have longer – like more of a - I thought there was gonna be another court date before this one, actually.
> Court: No, we were set for trial today.
> Mother: Okay. It probably would help me. I mean, I -
> Court: Alright, [Mother's mother], go ahead and have a seat out in the waiting area, please.
> Mother: I would really like to have an attorney when I -
> Court: You had an attorney, ma'am, that you didn't cooperate

with.

Mother: She withdrew while I was in rehab. She didn't -

Court: No, she withdrew – she didn't file it until Friday.

Mother: I didn't get out until last night.

* * *

Mother: Am I allowed to request Counsel?

Court: Ma'am, you have already had – been afforded the opportunity to have an attorney and you did not cooperate with your attorney. . . . Ma'am you had an attorney that you hired. You failed to cooperate with that attorney and she has withdrawn her representation, which you had no objection to on the day of trial. We are no longer going to delay this matter.

Transcript, Volume I at 6-8.

[5]     The trial court then took up the matter of a motion to quash filed by DCS. Apparently, Father had subpoenaed records from DCS, some of which involved Mother's other child. Father's attorney explained:

[P]art of the Court's order back on December 16, 2015 . . . I think the docket will reflect that there was a temporary order of custody that was granted to [Father]. Part of the Mother's parenting time was conditioned upon the other child's case. It was specifically referenced in the Court's order.

* * *

[T]he parenting time for [J.H.] was actually coupled on the other child's case to ensure that the Mother was compliant with all services that were being provided to her [in that CHINS case]. And if she was not then compliant with all those services there was to be no parenting time [with J.H.]

*Id.* at 8-10. The trial court denied the motion to quash but ordered Father's counsel to keep the information in the other child's case file from being

disseminated or used for any purpose outside this case. The trial court then heard brief testimony from the DCS case manager for Mother's other child. The case manager had been the child's case manager for two and a half months and had not had contact with Mother. He testified the child had been in foster care since initially removed from Mother's care in June 2015 and was doing well.

[6] The trial court then ruled from the bench that it was granting Father's petition for custody of J.H. and was ordering Mother to have parenting time with J.H. that mirrored what she was receiving with her other child through DCS. Mother protested:

> Mother: Your Honor, am I allowed to – you haven't heard my words at all. You haven't heard that I have so much to say. This is not fair.
> Court: Have I heard anything from the Father, ma'am?
> Mother: He doesn't have to defend himself.
> Court: Have I heard anything from the Father?
> Mother: He has an attorney.
> Court: Have I heard anything from his attorney?
> Mother: Yes.
> Court: No, ma'am, I haven't this morning. This record is – this is based strictly off your performance in your CHINS case.
> Mother: I have had contact with DCS. . . . I have two letters that I sent certified . . . letting her know when I went in.
> Court: [T]he Court is not changing its order. I am not holding this child in limbo any longer waiting for you to do whatever it is that you're doing. So at this time I'm ordering that the Father has custody of the child, supervised parenting time.

*Id.* at 14-15.  The trial court reduced its ruling to a written order, which noted Mother's counsel was allowed to withdraw at the hearing and Mother's request for a continuance to hire new counsel was denied "inasmuch as today is the day set for hearing in this matter . . ., Mother failed to adequately communicate . . . with her prior attorney, for judicial economy, and that the best interests of the child herein warrant some permanency to the Court's prior temporary Orders." Appellant's App., Vol. 2 at 11.  The written order also notes the court took judicial notice of the CHINS case for Mother's other child and heard testimony from the other child's case manager.

> After hearing this testimony, having heard brief argument from the parties, having reviewed the pleadings filed in this matter, and being duly advised in the premises [the court] now finds as follows:
>
> * * *
>
> 4.  The Court, having heard the facts and carefully considering the same to the custody factors outlined under Indiana Code § 31-17-2-8, determines that [J.H.'s] best interests are best suited in the Father's care and permanent custody.

*Id.* at 12-13.  Mother filed a motion to correct error which the trial court denied. This appeal ensued.

# Discussion and Decision

# I. Standard of Review

We review a trial court's custody modification decision for abuse of discretion, granting latitude and deference to our trial courts in family law matters. *Wilson v. Myers*, 997 N.E.2d 338, 340 (Ind. 2013). Accordingly, we will not reweigh the evidence, judge the credibility of the witnesses, or substitute our judgment for that of the trial court. *Robertson v. Robertson*, 60 N.E.3d 1085, 1091 (Ind. Ct. App. 2016). We will reverse the trial court's custody decision only if it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom. *Id.*

# II. Due Process

Mother contends the trial court's order modifying custody following a hearing at which the trial court allowed her counsel to withdraw, denied her a continuance to obtain other counsel, and did not offer her an opportunity to speak or present evidence on her behalf resulted in a fundamentally unfair hearing and violated her due process rights.

The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding. *D.T. v. Ind. Dep't of Child Servs.*, 981 N.E.2d 1221, 1224 (Ind. Ct. App. 2013). A parent's interest in the care, custody and control of his or her children is perhaps the oldest of our fundamental liberty interests. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Because child custody proceedings implicate

the fundamental relationship between parent and child, Indiana courts recognize that procedural due process must be provided to protect the substantive rights of the parties. *Fields v. Fields*, 749 N.E.2d 100, 110 (Ind. Ct. App. 2001), *trans. denied*. It is axiomatic that one way a trial court may abuse its discretion in modifying custody is failing to follow proper procedure. *Bailey v. Bailey*, 7 N.E.3d 340, 343 (Ind. Ct. App. 2014). Due process requires reasonable notice and an opportunity to be heard before custody or support can be modified. *White v. White*, 796 N.E.2d 377, 383 (Ind. Ct. App. 2003).

[10] If the State imparts a due process right, then it must give that right. *A.P. v. Porter Cty. Office of Family & Children*, 734 N.E.2d 1107, 1112 (Ind. Ct. App. 2000), *trans. denied*. The Indiana legislature has provided a fairly detailed list of procedural requirements for courts to follow in custody and modification cases. *See* Ind. Code ch. 31-17-2.

> [W]hen such an important issue as the custody of children is involved, a modification generally can be ordered only after a party has filed a petition requesting such a modification, the other party has notice of the filing, and *a proper evidentiary hearing is held at which both parties may be heard and the trial court [is] fully apprised of all necessary information* regarding change of circumstances and a child's best interests before deciding whether a modification should be ordered.

*Bailey*, 7 N.E.3d at 344 (emphasis added). "An opportunity to be heard is essential before a parent can be deprived of custody." *Id.* (citation omitted).

[11] Here, Father requested a change of custody, Mother had notice of the filing, and all parties appeared in court for a hearing. However, the trial court completely failed to give Mother a meaningful opportunity to be heard at the hearing. At the outset of the hearing, the trial court allowed Mother's counsel to withdraw based on her counsel's assertions that Mother had not been cooperative. Mother had no objection to this, but she also did not have much notice of it. According to Mother—and there is no evidence to the contrary—she was in rehab when counsel filed her motion to withdraw a week before the hearing, and only left rehab the day before the hearing. The trial court then denied Mother a continuance to seek other counsel or otherwise prepare to represent herself. Although the grant or denial of a motion for continuance is within the sound discretion of the trial court, denial of a continuance will be deemed an abuse of discretion if good cause is shown for granting the motion. *F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct. App. 2012). The withdrawal of counsel does not entitle a party to an automatic continuance and the moving party must show diligence in procuring new counsel. *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 311 (Ind. Ct. App. 2000). In addition to only having a week's notice of her counsel's intent to withdraw, Mother apparently spent that week in rehab and her opportunities to procure other counsel were likely limited. That she did not object to her counsel's withdrawal seems tied to her belief she would have additional time to prepare. *Cf. Litherland v. McDonnell*, 796 N.E.2d 1237, 1240 (Ind. Ct. App. 2003) (noting no abuse of discretion will be found when the moving party has not shown she was prejudiced by the denial), *trans. denied*. We appreciate the trial court's desire to bring this custody

matter to a close expeditiously. However, Father already had temporary custody of J.H., and therefore, a short continuance would have caused no prejudice to him and, more importantly, no harm to J.H. *See J.P. v. G.M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014) ("We must also consider whether a delay would have prejudiced the opposing party to an extent sufficient to justify denial of the continuance.").

[12] The denial of Mother's motion for a continuance alone may not have deprived her of due process in this proceeding, but that denial must be considered in conjunction with the manner in which the trial court conducted the "hearing" in this case. The trial court did not offer Mother an opportunity to cross-examine the sole witness, present witnesses or evidence of her own, or allow her to speak on her own behalf. Both the trial court at the hearing and Father in his brief to this court assert there was no error in this because the trial court did not allow Father to present evidence or speak, either. *See* Tr., Vol. I at 14 ("Have I heard anything from the Father, ma'am?"); Brief of Appellee at 9 ("Mother fails to advise this Court that the Father also did not present any facts supporting his case."). That does not excuse the trial court's failure to allow Mother to be heard; in fact, it only bolsters our conclusion the trial court failed to fully apprise itself of all information necessary for deciding the question of modification. In fact, the only evidence adduced at the hearing concerned the CHINS proceeding for Mother's other child. There was no evidence concerning J.H. at all. Although Mother's entire situation is clearly relevant to the question of modifying custody of J.H., Indiana Code section 31-17-2-21

requires a court to find a substantial change in one or more statutory factors before it may modify custody. Those statutory factors concern "the child,"—here, J.H.—and his or her interaction with family members and adjustment to his or her living situation, among other things. Ind. Code § 31-17-2-8. Although the trial court stated in its order it had "heard the facts" and "carefully consider[ed]" them in relation to the relevant factors, Appellant's App., Vol. 2 at 13, it is impossible to discern how it could have done so when no evidence was presented regarding those factors with respect to J.H.

[13] The procedural irregularities in the trial court's conduct of this modification hearing are of such significance that they denied Mother due process when modifying custody from her to Father. Accordingly, we reverse and remand this case for a proper evidentiary hearing at which all parties are allowed to be heard and the trial court receives and considers evidence concerning the statutory factors relevant to J.H. and any other evidence that bears on J.H.'s best interests.

# Conclusion

[14] The trial court did not afford Mother a meaningful opportunity to be heard at the custody modification hearing and we therefore reverse the trial court's order modifying custody of J.H. and remand for a full and complete hearing.

[15] Reversed and remanded.

Kirsch, J., and Barnes, J., concur.