## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2018, 8:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicole A. Zelin
Pritzke & Davis, LLP
Greenfield, Indiana

ATTORNEY FOR APPELLEE

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re The Matter of D.G. *(Minor Child)*:

J.E. *(Mother)*,

*Appellant-Respondent,*

v.

N.G. *(Father)*,

*Appellee-Respondent,*

and

The Indiana Department of Child Services,

*Appellee-Petitioner.*

July 31, 2018

Court of Appeals Case No. 18A-JC-156

Appeal from the Hancock Circuit Court

The Honorable Richard D. Culver, Judge

The Honorable R. Scott Sirk, Court Commissioner

Trial Court Cause No. 30C01-1609-JC-338

**Robb, Judge.**

# Case Summary and Issues

[1] J.E. appeals the juvenile court's custody determination which provided for joint physical and legal custody of her son, D.G. ("Child"). J.E. raises four issues for our review, which we restate as 1) whether sufficient evidence supported a modification of custody, 2) whether the juvenile court abused its discretion when it excluded J.E.'s proffered evidence, 3) whether the juvenile court was the appropriate forum for the custody determination, and 4) whether the juvenile court abused its discretion when it denied J.E.'s motion to correct error seeking a child support arrearage order. Concluding that the juvenile court did not abuse its discretion when it ordered that the parties exercise joint custody of Child, any error in the exclusion of J.E.'s evidence was harmless, the juvenile court was the appropriate court to render the custody determination, and that, even if J.E. had not waived her claim, the juvenile court did not abuse its discretion in denying J.E.'s Motion to Correct Error, we affirm.

# Facts and Procedural History

[2] Child was born in June of 2011 to J.E. and N.G. ("Father"), who continued to cohabitate until approximately eighteen months after Child's birth. Between approximately January of 2013 and November 9, 2014, Father had contact with Child on a weekly basis. In February of 2015, Father, who resided in Marion County, filed a petition in Marion Circuit Court ("the paternity court") to establish paternity and a child support order ("the paternity case"). On May 11, 2015, the paternity court issued its order establishing paternity, granting sole

physical custody to J.E., and ordering Father to pay $161.00 per week for Child's support. The paternity court did not issue any order regarding parenting time. Thereafter, Father saw Child approximately once each month. In July of 2016, Father moved to establish parenting time and for a modification of the child support order.

[3]     On September 23, 2016, J.E., who was living in Hancock County with Child, was arrested for possession of marijuana, Xanax, Suboxone, and paraphernalia. J.E. was also charged with neglect of a dependent for leaving Child without a caregiver. The Indiana Department of Child Services ("DCS") filed a verified petition in the Hancock Circuit Court ("the juvenile court") alleging that Child was a Child in Need of Services ("the CHINS case") based upon the fact that J.E. had been arrested and was incarcerated. Child was removed from J.E.'s care and placed with his maternal grandparents.

[4]     On September 28, 2016, Father moved for custody of Child in the paternity case. On October 5, 2016, J.E. and Father appeared in the CHINS case. J.E. admitted that she had ongoing substance abuse issues. J.E. and Father admitted that Child was a CHINS. The juvenile court adjudicated Child a CHINS and placed Child with Father. Child was to be transitioned over the course of a month from the maternal grandparents' home to Father's home so that Child could become acclimated to Father and his home. J.E. was to have supervised parenting time with Child. On October 11, 2016, the paternity court stayed proceedings on Father's custody motion in light of the ongoing CHINS proceedings. Child was fully transitioned to Father's home by November 1,

2016. A dispositional hearing in the CHINS case was set for November 2, 2016.

[5] A pre-dispositional report prepared for the CHINS case revealed the following facts. Both parents were employed at that time. Child, who was healthy and appeared to be developing normally, had a strong bond with J.E., Father, and his grandparents. Father had participated in Child and Family Team Meetings. DCS recommended supervised parenting time, substance abuse assessment, random drug screens, and home-based therapy for J.E. DCS recommended that Father participate in father engagement services. The DCS's permanency plan was to reunite Child with J.E. Family Case Manager Jessica Clagg appeared at the dispositional hearing and reported that Child's transition to Father's home was going well. The juvenile court adopted the DCS recommendation for services for J.E. and Father and continued Child's placement with Father.

[6] On December 27, 2016, Father moved for custody of Child in the CHINS case alleging that J.E. was unable to care for Child, J.E. had a history of denying Father parenting time, J.E. had an ongoing criminal case, and that a custody modification was in Child's best interests. DCS progress reports filed with the juvenile court on December 29, 2016, and March 3, 2017, indicated that Child was doing well in Father's home, enjoying good physical and psychological health. One report noted that "[Child] is currently place[d] with his Father, [], as he is able to provide him with a safe, stable home and meet all of his needs." Appellant's Appendix, Volume II at 65. The report concluded that Child's

placement with Father helped all of Child's caregivers to maintain their bond with Child and that Child had stability in his school and routine. Both parents were engaging in services. DCS added a recommendation that J.E. begin intensive outpatient treatment for her substance abuse issues. J.E. had exercised her parenting time and had begun having Child for overnight stays in her home twice a week.

[7] On March 15, 2017, the juvenile court held a combined hearing on Father's custody motion and to review matters in the CHINS case. Case Manager Clagg testified at the hearing that Child continued to do well in Father's home and that she had no safety concerns. Clagg's review report was admitted into evidence. Clagg was cross-examined by J.E.'s counsel and counsel for DCS. Her testimony revealed the following. Child had sustained a black eye on two separate occasions resulting from accidents while he was in Father's care. Child went to the emergency room for one of these incidents, and he made a second visit to the emergency room when he contracted pneumonia. Father did not take Child to the hospital on either occasion. After Child visited the emergency room for pneumonia, Father took Child to work with him despite the recommendation that Child go home and rest. Father missed follow-up appointments for the emergency room visits, and J.E. had taken the lead on ensuring that Child had his prescription medication and attended doctor's appointments. J.E. had also taken Child to the dentist because she was concerned that Father would not address Child's dental issues. Father did not attend the dental appointments.

[8]     At the close of Clagg's testimony, the juvenile court noted that it was short on time and requested that counsel for J.E. and Father summarize what their evidence would be. J.E.'s counsel objected to this procedure, and the juvenile court noted counsel's continuing objection. J.E.'s counsel represented that J.E.'s proposed evidence would show that

> There have been several issues that have occurred while the child's been in Father's care. We believe the December 20th– I wrote it down here – ER visit when Father didn't take the child to the hospital, following that ER visit there were some issues with the prescriptions and the child did not receive the prescriptions that he was supposed to receive. When the child was returned Mother and Grandmother had to get the child back on the prescriptions as the – as the doctor ordered. There was no follow up scheduled even despite the doctor's order that a follow up visit be scheduled. Father failed to show up to any of the dental appointments. Father failed to schedule any of the follow ups with dental care. There was a second ER visit where the child was diagnosed with pneumonia in February. Again, Mother and Grandmother took the child to the ER, received prescriptions and a diagnosis of – of pneumonia and a request for a follow up visit. The child was not supposed to stay at home and be rested, not go to school. The very next day from the ER visit Father picked child up, took child – based on what my client was told from Father – finished up his work day, went home with the child, did not provide the child with the prescriptions until he was asked to do so by DCS. No follow up visit on that ER visit was schedule [sic] by Father either. We've also had some issues with schooling. The child's come home with behavior charts that have to be signed and initialed and more than a month's worth weren't signed or initialed by Father. Mother and Grandmother had to get that (inaudible) and get it signed. There was also a family project with school that had – Father had two months to complete and it didn't get completed. Mother had to go to the

school and get the prop, get the assignment and get it completed before school. These are all incidents Father has been warned about or – or asked to change his behavior on by Mother and by Grandmother. Grandmother, [], is here to testify on Mother's behalf and to verified [sic] the allegations we've made in the summary. [Grandfather], the father of [J.E.], is also here to testify in her regard.

Transcript, Volume II at 108-09. The juvenile court recommended that the parties work together to ensure Child's well-being. The juvenile court took Father's modification request under advisement and set the case for a Permanency Hearing on September 6, 2017.

[9] By May of 2017, J.E. had made substantial progress in her case plan by completing her substance abuse treatment. DCS reported that her reunification risk level was low, and the juvenile court approved a trial home visit for Child in J.E.'s home. Under this arrangement, Child would reside principally with J.E., with Father exercising parenting time. DCS worked with J.E. and Father to establish a parenting time schedule, but J.E. and Father were unable to reach an agreement.

[10] After the trial home visit began, Father believed that J.E. was restricting his parenting time. On June 5, 2017, Father filed an emergency motion to modify custody seeking to exercise equal parenting time of Child with J.E. A DCS progress report filed the same day indicated that Child did well on the trial home visit with J.E. The report noted that both parents were compliant with their services, J.E. was sober, and Father was a "great provider. He

demonstrates this by consistently having stable employment to meeting [sic] [Child's] needs. Father is a loving Father. He demonstrates this by fighting hard to be able to maintain in [Child's] life." Appellant's App., Vol. II at 107. DCS recommended that Father speak with a therapist to help him connect with Child and that Father have home-based therapy to help him with his feelings of disconnection to Child. J.E. was admonished that she should not interfere with Father's parenting time. On June 23, 2017, DCS reported that J.E. had tested positive for methamphetamine. J.E. was directed to increase her contacts with her outpatient treatment providers to three times a week due to the positive drug screen.

[11] On June 28, 2017, the juvenile court held a hearing on Father's motions for custody. The trial court indicated that it wished to hear evidence only as to events that had occurred since the date of the last hearing, March 15, 2017. Case Manager Clagg's report was admitted into evidence. She testified at the hearing that two unsubstantiated reports had been made on Father to Child Protective Services. As a follow up to these reports, Clagg had interviewed Child, who she felt had been coached to say that he did not wish to spend time with Father. Father was compliant with all of his services. J.E. had missed two group substance abuse treatment sessions and screens, claiming she had not been informed they were required when, in fact, she had been so informed. Clagg noted that Child had come out of his shell during the trial home visit with J.E., and Clagg did not feel that there was any reason for either Father or J.E.

to exercise more parenting time than the other. J.E. and Father both presented testimony at the hearing.

[12] On July 1, 2017, the juvenile court entered an order which directed Father and J.E. to exercise equal parenting time but did not alter Child's custody. On August 25, 2017, DCS moved the juvenile court for a permanency hearing and determination of custody. A permanency report revealed that J.E. had completed her substance abuse services and had been successfully discharged from home-based therapy. Father had completed his father engagement services and home-based therapy. Both parents had attended the August 15, 2017, Team Meeting. DCS, J.E., and Father were all in agreement that the CHINS case could be closed.

[13] A permanency hearing and custody determination hearing was held on September 6, 2017, at which DCS reported that Child was thriving under the equal parenting time arrangement. DCS had no safety concerns with either parent. DCS recommended that the juvenile court enter an order on custody that allowed for each parent to exercise equal parenting time. J.E. testified at the hearing and objected to joint custody of Child based upon her belief that Child spent too much time commuting to and from school in Hancock County while he was at Father's home in Marion County. Child, who was not then enrolled in school, did not have any absences or tardies from school when he did attend. Father planned to move to Hancock County and requested equal parenting time with J.E.

[14]   In its September 22, 2017, Order on Permanency and Determination of Custody, the juvenile court found that parents had substantially complied with its provisional order and that Child had thrived under both parents' care. The trial court found that "[Child] needs both of his parents, and the parenting time arrangement provides the best opportunity for both parents to be a significant support in [Child's] life." Appellant's App., Vol. II at 141. The juvenile court found as follows:

> 14. There has been a change of circumstances so substantial and continuing as to make the terms of the aforesaid custody, parenting time and support orders unreasonable.
>
> 15. There has been a substantial change in one or more of the factors which the Court may consider under Indiana Code § 31-17-2-8 for purposes of modifying custody.
>
> 16. That the best interests of [Child] is substantially and significantly served by modifying the custody, parenting time, and support orders entered by the [paternity court] and granting [J.E.] and [F]ather joint physical and legal custody of child.

Appellant's App., Vol. II at 142. The juvenile court entered a child support order which did not address any arrearage owed by Father under the previous support order entered by the paternity court. The juvenile court further found that the conditions necessitating the CHINS case had been resolved and dismissed the CHINS case.

[15]   Both parties subsequently filed motions pertaining to the juvenile court's child support order. In her October 6, 2017, Motion to Correct Error, J.E. alleged that the juvenile court should have included in its September 22, 2017, child

support order the child support arrearage owed by Father, which she alleged to be $8,694.00. Appellant's App., Vol. II at 150. After a December 20, 2017, hearing on both parties' motions, the juvenile court declined to alter its September 22, 2017, child support order and deferred any further litigation of child support issues to the paternity court. J.E. now appeals the juvenile court's custody determination and its child support order.[1]

# Discussion and Decision

## I. Custody Determination

### A. Standard of Review

[16] J.E. first challenges the evidence supporting the juvenile court's determination that a substantial change in circumstances justifying a custody modification had occurred. "A trial court's custody determination is afforded considerable deference on appeal as it is the trial court that sees the parties, observes their conduct and demeanor, and hears their testimony." *Robertson v. Robertson*, 60 N.E.3d 1085, 1090-91 (Ind. Ct. App. 2016). On review, we do not reweigh the evidence, rejudge the credibility of witnesses, or substitute our judgment for that of the trial court. *Id*. Reversal of the trial court's custody determination is

---

[1] Although DCS was a party in the proceedings below, it filed a Notice of Intent Not to File Brief of Appellee and does not participate in this appeal.

merited only if it is clearly against the logic and effect of the facts and circumstances or the reasonable inferences drawn therefrom. *Id.*

## B. Sufficiency of the Evidence

[17] Indiana Code section 31-17-2-21(a) provides that the trial court may modify a child custody order when: "(1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter."[2] The trial court is required to consider the factors of section 8, which include the relationship the child has with his or her parents, siblings, and others, the child's adjustment to home, school, and community, and the mental and physical health of all involved. Ind. Code § 31-17-2-8(1)-(8).

[18] Here, Father, J.E., and Child lived together until Child was approximately eighteen months old. Thereafter, J.E. was originally granted primary physical custody of Child in the paternity case. Father continued to have contact with Child, although on a much less frequent basis. On September 23, 2016, J.E. was arrested for drug possession and charged with neglect of a dependent, resulting in Child being removed from her care, a CHINS case being opened, and Child's eventual placement with Father.

---

[2] The juvenile court cited the custody modification statute applicable to dissolution proceedings rather than Indiana Code section 31-14-13-2 which applies to custody modifications within paternity proceedings. The statutes are substantially the same. For consistency's sake, we cite the statute cited by the juvenile court.

[19] During the pendency of the CHINS case, Child thrived during his placement in Father's care. Father had significant parenting time with Child and was able to form a strong bond with Child. Father addressed deficiencies in his parenting and his connection with Child through the father engagement services and home-based therapy provided him in the CHINS case. Child continued to thrive after the juvenile court entered its July 1, 2017, order directing Father and J.E. to exercise equal parenting time. By the time of the permanency and custody hearing on September 6, 2017, DCS recommended that the juvenile court enter a permanent order granting joint custody of Child to the parties. In light of this evidence, the juvenile court reasonably concluded that it was in Child's best interests that J.E. and Father exercise joint custody because a substantial and positive change in Child's relationship with Father had occurred through Father's increased involvement in Child's life and through Child's inclusion in Father's home.

[20] J.E. argues that the juvenile court abused its discretion when modifying custody because it did not specify which statutory factors it found had substantially changed that merited a modification of custody. *See* Brief of Appellant at 13-14. However, we agree with Father that the juvenile court was not required to make any such findings. *See* Appellee's Brief at 10. When neither party requests special findings of fact and conclusions of law, the trial court is not required to make special findings regarding which of the factors listed in Indiana Code section 31-17-2-8 it relied upon in modifying custody. *Kanach v. Rogers*, 742 N.E.2d 987, 989 (Ind. Ct. App. 2001). All that is required is that the

trial court consider the statutory factors before concluding that a substantial change has occurred. *Id.* Here, neither party requested special findings of fact, and the juvenile court's order included a general finding that a substantial change in one or more of the statutory factors had occurred. Appellant's App., Vol. II at 142.

J.E. also draws our attention to what she considers to be deficiencies in Father's parenting as well as to her own positive qualities as a mother. These arguments are unpersuasive given that, pursuant to our standard of review, we do not reweigh the evidence or substitute our own judgment for the juvenile court's. *See Robertson*, 60 N.E.3d at 1090. Lastly, we find no support in the record for J.E.'s contention that the trial court impermissibly punished her for interfering with Father's parenting time by modifying custody in this matter. *See* Br. of Appellant at 14. Finding that the juvenile court did not abuse its discretion and that its custody modification determination was supported by the evidence, we affirm.

# II. Summary Proceeding

J.E. next contends that the trial court erred when it directed the parties to present a summary of their evidence through counsel at the March 15, 2017, CHINS and custody hearing in lieu of additional live testimony of witnesses.

## A. Standard of Review

J.E. does not favor us with a standard of review in this section of her argument. Br. of Appellant at 15-17. However, we note that, as a general matter, the

admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse a trial court's evidentiary ruling only upon an abuse of that discretion. *In re Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014).

## B. Preliminary Considerations

As a preliminary matter, we disagree with Father that J.E. failed to preserve this issue for appeal by neglecting to make an offer to prove. *See* Appellee's Br. at 12-13. An offer to prove is necessary to preserve for appeal the issue of whether a trial court improperly excluded evidence. *Duso v. State*, 866 N.E.2d 321, 324 (Ind. Ct. App. 2007). An adequate offer to prove usually consists of an offer of the substance of the evidence, an explanation of its relevance, and the proposed grounds for admissibility. *Id*. Here, J.E.'s summary of her proposed evidence operated as a functional offer to prove that was adequate to preserve the issue for appeal since it was made in response to the juvenile court's request and not to any evidentiary objection on J.E.'s part. Tr., Vol. II at 107-09. However, J.E. did not mention any proposed documentary evidence in her summary, and so we do not address her contention that the juvenile court erred when it disallowed her "documented evidence." *See* Br. of Appellant at 15.

In addition, contrary to Father's contention on appeal, *see* Appellee's Br. at 8, J.E. has timely appealed this issue. J.E. filed a motion to correct error on October 6, 2017. The juvenile court issued its ruling on that motion at a hearing conducted on December 20, 2017. Tr., Vol. II at 200-01. J.E. had thirty days within which to file her appeal of the juvenile court's final order.

Ind. Appellate Rule 9(A)(1). J.E. filed her Notice of Appeal on January 19, 2018, which was within the thirty-day timeframe. Docket, No. 18A-JC-156.

## C. Exclusion of J.E.'s Evidence

We have long recognized that child custody proceedings implicate the fundamental relationship between parent and child, necessitating that procedural due process be provided to protect the substantive rights of the parties. *Brown v. Brown*, 463 N.E.2d 310, 313 (Ind. Ct. App. 1984). "An opportunity to be heard is essential before a parent can be deprived of custody." *Id*. In furtherance of this goal, the Indiana custody modification statute contemplates a hearing prior to modification. *See* Ind. Code § 31-17-2-6 ("Custody proceedings must receive priority in being set for hearing").

Our supreme court recently addressed the use of summary proceedings in the family law context. In *Wilson v. Myers*, 997 N.E.2d 338 (Ind. 2013), the court found that the trial court had committed reversible error by conducting a summary custody modification hearing without the appropriate procedural safeguards. *Id*. at 341. In that case, the trial court did not swear in any witnesses, no documentary evidence was introduced, and no courtroom formalities were observed. *Id*. The hearing amounted to little more than an "unorganized shouting match." *Id*. at 342. Furthermore, in its order modifying custody, the trial court failed to mention whether modification was in the best interest of the children involved or that a substantial change in any of the necessary statutory factors had occurred. *Id*. at 341. The court concluded that

reversal was required because it could not infer from the record that the trial court had contemplated those matters because nothing in the transcript of proceedings allowed such an inference. *Id.*

[28] In *Bogner v. Bogner*, 29 N.E.3d 733 (Ind. 2015), cited by both parties on appeal, the use of summary proceedings in a child support matter was at issue. Father and Mother were both present at the support hearing, and each was represented by counsel. *Id.* at 739. Father assented when the trial court inquired if the parties were proceeding in a summary fashion, and he did not offer any procedural objections during the hearing. *Id.* The court found the use of a summary proceeding to be appropriate because the parties had stipulated to it and because they did not contest most of the relevant facts necessary for the trial court to make its determination. *Id.* at 739-40.

[29] In light of this authority, we conclude that the trial court abused its discretion when it proceeded in a summary fashion at the March 15 hearing. Unlike the litigants in *Bogner*, J.E. did object to proceeding in a summary fashion, and the juvenile court noted her continuing objection. Given the importance of the fundamental interests at stake in a child custody hearing, the trial court erred when it disallowed J.E.'s evidence at the March 15 hearing over her counsel's objection.

[30] However, any error in a trial court's use of a summary proceeding will not require reversal absent a showing of prejudice. *Neese v. Kelley*, 705 N.E.2d 1047, 1050 (Ind. Ct. App. 1999). Here, we cannot conclude that J.E. was prejudiced

when the trial court excluded her witnesses and directed the parties to summarize their evidence. The matters set forth in J.E.'s offer to prove concerning Child's ER visits and their aftermath, his dental issues, and matters pertaining to his schooling were not seriously contested by Father. Indeed, our review of the record did not uncover any direct denial by Father regarding the matters set forth in J.E.'s offer to prove at the March 15 hearing or at the subsequent custody hearings held on June 28 and September 6, 2017, prior to the juvenile court rendering its final custody determination.

[31] Although J.E. claims that she was prejudiced because the juvenile court limited the scope of the subsequent June 28, 2017, hearing, *see* Br. of Appellant at 17, no such limit was placed upon the September 6, 2017, hearing. In addition, much of the information concerning Child's visits to the ER and their aftermath came into evidence during the March 15 hearing through the testimony and cross-examination of Clagg, and thus any further testimony on those matters would have been cumulative. *See In re C.G.*, 933 N.E.2d 494, 507 (Ind. Ct. App. 2010), *aff'd on trans.*, 954 N.E.2d 910 (holding that the exclusion of evidence was harmless where it would have merely been cumulative of other evidence presented).

[32] Furthermore, the March 15 hearing was not a free-for-all bereft of procedural safeguards or the admission of any substantive evidence. The hearing was conducted in an orderly fashion, Clagg's report was admitted into evidence, and Clagg testified and was cross-examined by J.E.'s counsel. In addition, unlike the custody order at issue in *Wilson*, the juvenile court in this case made the

statutorily required findings and, as set forth above, those findings were supported by other evidence in the record on appeal. Thus, we find that any error committed by the juvenile court in conducting the March 15 hearing to be harmless.

# III. Forum of Custody Determination

J.E. also contends that the juvenile court erred when it modified custody within the ongoing CHINS case because modification was not necessary for the resolution of the CHINS case. Rather, J.E. asserts that the paternity court was the better court to determine custody.

## A. Waiver

J.E. neglects to cite a standard of review for her argument on this issue. Br. of Appellant at 17-20. As we discuss in further detail below, because the paternity court and the juvenile court had concurrent jurisdiction over the custody issues in this case, we find that this matter is properly framed as whether the juvenile court was the proper venue for the custody determination. *See Cabanaw v. Cabanaw*, 648 N.E.2d 694, 697 (Ind. Ct. App. 1995) ("Jurisdiction involves a court's power to hear a particular group of cases; venue connotes the proper situs for the trial of an action"). The question of whether a matter is litigated in the proper venue must be raised by a preliminary motion or by affirmative defense. Ind. Trial Rules 12(B)(3); 75(A). If a party challenging venue does not raise the issue by filing a motion or by raising it as an affirmative defense, the issue is waived. *See* Ind. Trial Rule 12(H)(1).

[35] Inasmuch as J.E. attempts to challenge the venue of the custody determination in this case, we hold that she has waived the issue. J.E. did not challenge the propriety of the juvenile court to hear issues relating to Child's custody either by filing a motion in response to Father's petition for custody in the CHINS case or by raising the issue as an affirmative defense in a subsequent pleading. As such, she has waived the issue for our review. *Id.*

## B. The Juvenile Court Appropriately Modified Custody

[36] However, even if J.E. had properly preserved her claim for appeal, we find that the issue of custody was properly before the juvenile court. The paternity court and the juvenile court had concurrent jurisdiction over custody issues, venue properly rested in the juvenile court, and it was in the best interests of Child to have the determination made by the juvenile court.

[37] Indiana Code section 31-30-1-13 provides in relevant part as follows:

> (a) Subject to subsection (b), a court having jurisdiction under IC 31-14 over establishment or modification of paternity, child custody, parenting time, or child support in a paternity proceeding has concurrent original jurisdiction with another juvenile court for the purpose of establishing or modifying paternity, custody, parenting time, or child support of a child who is under the jurisdiction of the other juvenile court because:
>
> (1) the child is the subject of a child in need of services proceeding . . . .

Thus, a juvenile court exercising jurisdiction in a CHINS proceeding also has jurisdiction to entertain custody matters, even if a paternity court previously had jurisdiction over those matters.

[38] Here, paternity was established in the paternity court in May of 2015. Therefore, the paternity court had original jurisdiction over paternity and custody matters. The CHINS proceeding was then initiated in September of 2016 in the juvenile court, which then acquired concurrent jurisdiction over the issue of custody. Ind. Code § 31-30-1-13 (a)(1). On October 13, 2016, the paternity court stayed the custody proceedings being litigated in that court pending resolution of those matters in the juvenile court. Venue of the custody matters properly rested in the juvenile court in Hancock County, as both J.E. and Child resided there at the time of the filing of Father's custody motion. *See* Ind. Trial Rule 75(A)(1) (providing that preferred venue for a matter rests where any defendant resides).

[39] The juvenile court maintained jurisdiction over the CHINS and custody issues from September of 2016, until September 22, 2017, when it determined custody and closed the CHINS case. During that period, the juvenile court received numerous reports from DCS detailing Child's status and the status of both parents as they undertook services through the CHINS proceedings. The juvenile court also held several hearings for review of the CHINS matters. Between the two courts having concurrent jurisdiction over custody issues, the juvenile court was the better court to entertain the issue of custody having heard evidence generated in the CHINS proceedings that was directly relevant to a custody determination, such as J.E.'s progress in addressing her substance abuse issues, Father's progress in developing his parenting skills, and Child's status while in the care of both parents. It was in the best interests of Child and

of judicial economy for the juvenile court to have made the custody determination rather than delaying justice by deferring to the paternity court to relitigate many of the same issues addressed in the CHINS case.

[40] Nevertheless, J.E. argues that the paternity court should have determined custody because the juvenile court had "limited time and resources to address the issues of custody once reunification was complete." *See* Br. of Appellant at 18-19. J.E. does not support this argument with citation to the record, and we find none. Concluding that the juvenile court was the appropriate forum for addressing the custody issue in this matter, we will not disturb its custody determination.

# IV. Child Support Order

[41] J.E. further argues that the juvenile court erred when it deferred to the paternity court any further litigation of the issue of child support arrearages owed by Father pursuant to the May 2015 child support order. Since this issue was the subject of J.E.'s Motion to Correct Error, we frame the argument on appeal as whether the juvenile court erred when it denied her Motion to Correct Error.

## A. Waiver

[42] We begin by noting that J.E. failed to request that the juvenile court consider child support arrears in issuing its support order, raising the issue for the first time in her Motion to Correct Error. Issues raised for the first time in a motion to correct error are waived. *See Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000). Because J.E. never raised this issue to the juvenile court until she filed

her Motion to Correct Error on October 6, 2017, we find that she has waived this issue for appeal.

## B. Motion to Correct Error

[43] Even if J.E. had not waived her claim, we note that the juvenile court properly denied J.E.'s Motion to Correct Error seeking an order addressing Father's alleged support arrears. We review a trial court's ruling on relief from judgment for an abuse of discretion. *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013). Here, we find no such abuse of discretion. The juvenile court had no obligation to address the issue of support arrearages *sua sponte*. *See* Ind. Code § 31-16-12-3(b) (providing that a trial court may issue an order on arrearages "*upon request* of a person or an agency entitled to receive child support payments") (emphasis added).

[44] Furthermore, the juvenile court could not have properly granted the relief J.E. sought in her Motion to Correct Error. Indiana Code section 31-30-1-13 provides as follows:

> (c) If, under this section, a juvenile court:
>
> (1) establishes or modifies paternity, custody, child support, or parenting time of a child; and
>
> (2) terminates a child in need of services proceeding or a juvenile delinquency proceeding regarding the child;
>
> the order establishing or modifying paternity, custody, child support, or parenting time survives the termination of the child in

need of services proceeding or the juvenile delinquency proceeding until the court having concurrent original jurisdiction under subsection (a) assumes or reassumes primary jurisdiction of the case to address all other issues.

(d) A court that assumes or reassumes jurisdiction of a case under subsection (c) may modify child custody, child support, or parenting time in accordance with applicable modification statutes.

*Id*. at (c)-(d). Thus, the applicable statues contemplate that, once a juvenile court closes a CHINS case, its jurisdiction to entertain child support matters reverts to the court of original jurisdiction. Here, after the juvenile court entered its child support order and closed the CHINS proceeding, its authority to determine child support issues reverted to the paternity court which, in any event, had issued the order upon which any arrearage calculation would be based. It cannot be said that the juvenile court abused its discretion in failing to grant relief on a matter over which it no longer had jurisdiction. Therefore, we find no error in the juvenile court's denial of J.E.'s Motion to Correct Error, and we affirm its child support order.

# Conclusion

Concluding that the juvenile court did not abuse its discretion in reaching its custody determination which was supported by the evidence, that any error in the juvenile court's exclusion of J.E.'s evidence was harmless, that the juvenile

court was an appropriate forum to modify custody, and that it did not abuse its discretion in denying J.E.'s Motion to Correct Error, we affirm.

[47] Affirmed.

Najam, J., and Altice, J., concur.